## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 06-196 (JRT / SRN) |
| **Plaintiff,** | |
| | **REPORT AND RECOMMENDATION** |
| v. | |
| **(1) Michael Roman Afremov,** | |
| **(2) Frederick James Fischer, and** | |
| **(3) Foremost Machining Co., Inc.** | |
| **Defendants.** | |

---

Joseph T. Dixon, III, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for U.S.A.

Joseph G. Petrosinelli, Craig D. Singer, Williams & Connolly LLP, 725 12th St. NW, Washington, D.C. 20005; Steven Wolter, Kelley & Wolter, P.A., Centre Village Offices, Suite 2530, 431 South Seventh Street, Minneapolis, MN 55415, for Defendant Afremov.

Ronald I. Meshbesher, Meshbesher & Spence, Ltd. 1616 Park Ave. South, Minneapolis, MN 55404; Kevin J. Short, 333 South Seventh Street, # 2890, Minneapolis, MN 55402, for Defendants Fischer and Foremost Machining Co.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendant

Afremov's various dispositive pretrial motions: (1) To Dismiss Counts 1 Through 8 of the

Superseding Indictment (Doc. No. 73), (2) To Dismiss Counts 1 Through 8 of the Superseding

Indictment as Unconstitutionally Vague and Barred By the Rule of Lenity (Doc. No. 76), (3) To

Dismiss Conspiracy and Aiding and Abetting Charges (Doc. No. 79), (4) To Dismiss Money

Laundering Charges In The Superseding Indictment (Doc. No. 86), (5) To Dismiss Money

Laundering Charges Based on United States v. Santos (Doc. No. 111), and (6) To Dismiss and

Limit the Forfeiture Allegations (Doc. No. 89).[1]  The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a).  This Court recommends that the motions be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 8, 2006, Defendants Michael Roman Afremov, Frederick James Fischer, and Foremost Machining Company, Inc. ("Defendants") were indicted on multiple counts of mail fraud, conspiracy, money laundering and related offenses.  (Doc. No. 39 (Superseding Indictment) ("Indictment").)  Counts 1 through 8 allege mail fraud against all three Defendants.  Count 9 alleges a conspiracy to commit mail fraud.  Counts 10 through 14 charge Afremov with money laundering and Count 15 charges Fischer with the same offense.  Counts 16 through 18 charge Afremov with filing false tax returns.  The Indictment also includes forfeiture allegations regarding all three Defendants.

The basic scheme as alleged by the government was as follows:  Afremov was an officer and director of, and major shareholder in, AGA Medical Corporation, which developed and manufactured medical devices.  Until August 2002, Afremov was also Vice President of Operations in charge of manufacturing and quality control.  Accordingly, he was responsible for selecting vendors of parts and services that AGA needed.  Afremov selected Foremost Machining Company as the sole source vendor of certain parts purchased by AGA.  As a result, AGA paid in excess of $6 million to Foremost between July 1988 and October 2002.  Fischer was the President and sole shareholder of Foremost.

From approximately August 1998 until August 2002, Fischer directed periodic kickback

---

[1]  This Court will rule upon the various non-dispositive motions filed by both parties in a separate Order.  Defendants' Joint Motion to Designate Case as Complex (Doc. No. 28) is moot.

payments in excess of $1.2 million from Foremost to Advanced Technologies Corporation ("ATC"), a corporation formed by Afremov in July 1998.  Afremov and his wife were the sole shareholders of ATC.  Afremov then withdrew those funds from ATC and used them for his personal benefit.

Afremov has filed numerous pretrial motions, including the dispositive motions referenced above.  Defendants Fischer and Foremost each filed a Motion to Join, requesting that they be permitted to join "those pre-trial motions filed by . . . Afremov, which request dismissal or appropriate relief common to the interests of all defendants."  (Doc. Nos. 82 & 84.)  This Court granted those motions to join.  (Doc. No. 133.)[2]

## II.    DISCUSSION

In a pretrial challenge of the Indictment, Defendants have asserted a variety of arguments that seek to dismiss or limit the various charges.  Most of these arguments, however, are not properly raised at this juncture of the proceedings.

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  Fed. R. Crim. P. 9(b)(2).  "A motion to dismiss is generally 'capable of determination' before trial 'if it involves questions of law rather than fact.'"  United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993).  Thus "a Rule 12(b) motion to dismiss is not the proper way to raise a factual defense."  Id.  Where a defendant's arguments challenge the government's ability to prove an element of the offense, the motion "amount[s] to a premature challenge to the sufficiency of the government's evidence tending to prove a material element of the offense."  Id. at 669-70.  Such an argument should be presented by, for

---

[2]  Accordingly, for ease of reference this Court will refer to the motions as having been brought by all three Defendants.

example, a Rule 29 motion for acquittal "'and not by a pretrial motion to dismiss.'"  Id. at 670.

It is axiomatic that "'[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence' [and] '[a] motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.'"  United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996) (internal citations omitted). The Federal Rules of Criminal Procedure simply do not "'provide for a  pre-trial determination of the evidence.'"  Id. (internal citation omitted).  Accordingly, "[a] district court may not resolve evidentiary issues on a motion to dismiss."  United States v. Self, 2 F.3d 1071, 1082 (10th Cir. 1993).  Thus, it is improper to file a motion to dismiss an indictment on the ground that the defendant did not violate the statute charged because an indictment "may not be challenged by a pretrial motion on the ground that it is not supported by adequate evidence."  United States v. King, 581 F.2d 800, 802 (10th Cir. 1978).

With this understanding of the limited function of an indictment and the proper role of a Rule 12 motion to dismiss, the Court turns to the various dispositive motions filed by Defendants.

### A.      The Mail Fraud Counts Properly Allege Acts That Constitute A Violation Of The Mail Fraud Statutes

In their first motion, Defendants contend that Counts 1 Through 8 must be dismissed because they fail to "allege acts that constitute a violation of the mail fraud statutes."  (Mem. at 1.)  They assert that the Indictment fails to allege acts that constitute mail fraud because (1) it fails to allege facts that constitute a plan or scheme to defraud, (2) it fails to allege use of the mails "'for the purpose of' or 'in furtherance of' the purported scheme to defraud" and (3) it fails to allege materiality.  (Mem. at 4.)

The government claims Defendants are mistakenly conflating the burden of proving guilt

with the lesser burden of proper pleading.  (Mem. at 19-20.)  With respect to the alleged plan or scheme to defraud, it contends that the "participation of an employee in a kickback scheme by his employee's suppliers . . . has long been recognized" as such a scheme.  (Id. at 19.) Moreover, it argues that pleading such a scheme is enough as the government need not allege that Defendants acted with an intent to harm.  (Id. at 20.)

"The indictment or the information must be a plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  Rule 7(c) "introduced a 'simple form of indictment'" requiring only that the indictment "'briefly and succinctly [set] forth the facts of the specific crime.'"  United Sates v. Vogt, 230 F. Supp. 607, 610 (E.D. La. 1964).  "Indictments need not exhaustively recount the facts surrounding the crime's commission."  United States v. Agostino, 132 F.3d 1183, 1189 (7th Cir. 1997).  "To comply with Rule 7(c), an indictment need not provide the evidentiary details of the government's case."  United States v. Ellender, 947 F.2d 748, 755 (5th Cir. 1991).

There are "two constitutional requirements for an indictment: 'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  United States v. Resendiz-Ponce, ___ U.S. ___, 127 S. Ct. 782, 788 (2007) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).  "'The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved.'"  Agostino, 132 F.3d at 1191.

It is beyond doubt that what must be proved at trial does not necessarily have to be alleged in the indictment.  E.g. Hanf v. United States, 235 F.2d 710, 716 (8th Cir. 1956) (stating, in appeal from conviction for making false reports, that "the particulars as to falsity need not be

alleged in the indictment since they are a matter of proof at trial"). "Failure to state every fact concerning the offense does not destroy the entire pleading." <u>Id.</u> at 713. Even under the common law–which imposed more rigorous pleading standards than exist under the Federal Rules of Criminal Procedure–an indictment need not include everything that must be proved at trial. <u>United States v. Simmons</u>, 96 U.S. 360, 364 (1877) ("The means of effecting the criminal intent . . . are considered to be matters of evidence to go to the jury to demonstrate intent, and not necessary to be incorporated in an indictment.").

Accordingly, "[a]n indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." <u>United States v. Fleming</u>, 8 F.3d 1264, 1265 (8th Cir. 1993). As the Eighth Circuit has explained:

> "The sufficiency of an indictment should be judged by practical, and not by technical, considerations. It is nothing but the formal charge upon which an accused is brought to trial. An indictment which fairly informs the accused of the charge which he is required to meet and which is sufficiently specific to avoid the danger of his again being prosecuted for the same offense should be held good."

<u>Hanf</u>, 235 F.2d at 714 (quoting <u>Hewitt v. United States</u>, 110 F.2d 1, 6 (8th Cir. 1940)).[3]

### 1.    The Indictment Sufficiently Alleges A Scheme To Defraud

Defendants challenge the Indictment as inadequately pleading mail fraud under either of what Defendants characterize as two different theories alleged by the Government: (1) that Defendants defrauded AGA of an intangible right to honest services; and (2) that Defendants

---

[3] The Court notes that the bulk of the cases on which Defendants rely involve challenges to convictions after a trial, not challenges of the sufficiency of the indictment before trial. <u>E.g.</u> <u>United States v. Lamoreaux</u>, 422 F.3d 750 (8th Cir. 2005); <u>United States v. Pennington</u>, 168 F.3d 1060 (8th Cir. 1999); <u>United States v. Jain</u>, 93 F.3d 436 (8th Cir. 1996). Moreover, in at least some of the appellate cases cited by Defendants that did concern the pretrial dismissal of an indictment, the court of appeals reversed the dismissal. <u>E.g.</u> <u>United States v. Polychron</u>, 841 F.2d 833, 837 (8th Cir. 1988).

"obtained money by . . . false and fraudulent pretenses, representations, and promises, by use of the mails." (Mem. at 6.)[4]

**(a)      The Indictment Adequately Alleges Mail Fraud Under Defendants' "First Theory"**

With respect to the first theory, Defendants contend that the Indictment must be dismissed for (1) failure to allege fraudulent intent, and (2) failure to allege breach of a duty.

Defendants claim that the Indictment "contains no allegations that would support a finding of fraudulent intent," and that it "does not allege that AGA (or any other person . . .) suffered financial or other tangible harm as a result of the alleged payments from Foremost to ATC." (Mem. at 7.) Defendants assert that the Indictment "does not allege that AGA or any AGA shareholder suffered any actual harm"–such as paying unreasonable prices for Foremost's products or paying more than it would have absent the kickbacks or receiving unsatisfactory goods–as a result of their actions. (Id. at 2.) Defendants further argue that "[b]ecause the Indictment contains no allegations of actual financial harm to anyone, it must allege facts independent of the alleged scheme that would show fraudulent intent," but that here "all of the allegations that could possibly relate to Afremov's intent involve only the alleged scheme." (Id. at 8-9.)

Granted, the government must prove–to support a conviction–an intent to harm the victim, which requires either actual harm or evidence independent of the alleged scheme that shows the defendant's fraudulent intent. United States v. Jain, 93 F.3d 436, 442 (8th Cir. 1996). But in the context of a pretrial challenge to the indictment, the issue is only "whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the

---

[4] The Court notes that it does not agree with Defendants' characterization of the Indictment as pleading two such separate theories. See infra Section II.A.1(b).

charge, not whether the Government can prove its case." United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982) (reversing dismissal of mail fraud indictment).

Here, the Indictment alleged that Defendants "did knowingly and intentionally execute a scheme to defraud and to deprive another of the intangible right of honest services, and to obtain money by means of false and fraudulent pretenses, representation, and promises, by use of the mails." (Doc. No. 39, ¶ 2.)  The Indictment then proceeded to elaborate on the nature of the scheme, noting that Afremov owed his honest and faithful services to AGA, that he selected Foremost as the sole supplier of certain parts, that Fischer then directed kickbacks from Foremost to Afremov's own corporation–which funds Afremov used for his personal benefit–and that Afremov concealed these payments from AGA.  (Id. ¶¶ 3-7.)

An indictment "should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." Buckley, 689 F.2d at 899. Under this standard, the Court believes that the Indictment here satisfies the requirements that it inform Defendants of the charge and that it permits them to plead an acquittal or conviction in bar of future prosecutions for the same offense.

Defendants' particular arguments–for example, that the Indictment fails to establish actual harm–fail to undermine the sufficiency of the Indictment.  The Indictment alleged that Defendants "did knowingly and intentionally execute a scheme to defraud and to deprive another of the intangible right of honest services." (Doc. No. 39, ¶ 2.)  The Indictment need not have alleged that AGA or its shareholders suffered any actual harm because "to prove a scheme to defraud, the government need not prove actual harm.  'The essence of a scheme to defraud is an intent to harm the victim.'" United States v. Lamoreaux, 422 F.3d 750, 754 (8th Cir. 2005) (internal citation omitted).  "[P]roof of intent to harm the victim" does not require "proof of

actual harm." Id.  Rather, "proof that a customer made substantial and secret kickbacks to a corporate fiduciary is sufficient to support a finding of intent to harm because actual harm may reasonably be inferred from the fact that the customer paid the fiduciary amounts to which the corporation was entitled." Id.  "'When the necessary result of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself.'" Id. at 754-55 (internal citation omitted).

While the government will have to prove at trial that Defendants caused or intended to cause actual harm or injury, "proof of intent to harm may be inferred from the willful non-disclosure by a fiduciary . . . of material information he has a duty to disclose" and the "jury may infer intent from circumstantial evidence." United States v. Pennington, 168 F.3d 1060, 1065 (8th Cir. 1999).  Accordingly, for purposes of evaluating the sufficiency of the Indictment pretrial, the Indictment cannot be required to expressly plead what may be proven by circumstantial evidence that has yet to be introduced at trial.

Defendants also contend that the Indictment failed to plead a "violation of any fiduciary duty or any other specific duty," much less the greater requirements that distinguish criminal fraud from the civil wrong of a mere breach of fiduciary duty.  (Mem. at 9-10.)  They assert that the "Indictment alleges only that Afremov 'owed his honest and faithful services to AGA,'" and fails to allege any "violation of any fiduciary duty or any other specific duty."  (Mem. at 10.)

But again, this is a matter of proof for trial, not a basis for a valid pretrial challenge of the Indictment.  Defendants cannot obtain a dismissal of the Indictment on the basis that it impermissibly criminalizes what should amount only to a civil wrong before the government has even had a chance to present its actual case in any particular detail at trial.  Perhaps most importantly, although there is some debate as to how far the 1988 amendment of the mail fraud

statutes should extend so as not to criminalize what should properly constitute only a civil wrong, e.g. United States v. Jain, 93 F.3d 436, 441-42 (8th Cir. 1996), here the violation alleged by the government falls well within the proper reach of Sections 1341 and 1346 as it alleges a rather generic mail fraud kickback scheme.

**(b)      The Indictment Adequately Alleges Mail Fraud Under Defendants' "Second Theory"**

Defendants also challenge the Indictment with respect to its allegations of "facts sufficient to support the second theory of mail fraud"–that is, that Afremov "obtained money 'by means of false and fraudulent pretenses, representations, and promises." (Mem. at 11.) Defendants contend that Section 1341 "applies only to false promises or misrepresentations *as to the future*" and claim the Indictment "alleges that Afremov's conduct was fraudulent due to his alleged *nondisclosure* of *prior* purported 'kickbacks.'" (Id. (emphases in original).)

The Court first questions Defendants' characterization of the Indictment as stating two separate theories of mail fraud. Defendants claim that the Indictment separately alleges that they "(a) defrauded AGA and its shareholders of an intangible right to honest services; and (b) obtained money by means of false and fraudulent pretenses, representations, and promises, by use of the mails. Indictment ¶¶ 2, 8." (Mem. at 6.) Paragraph 2 of the Indictment, however, alleges that Defendants "did knowingly and intentionally execute a scheme to defraud and to deprive another of the intangible right of honest services, and to obtain money by means of false and fraudulent pretenses, representations, and promises, by use of the mails." (Doc. No. 39, ¶ 2.) This simply tracks the language of Section 1341, which provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by

10

the Post Service . . . shall [be guilty of mail fraud].

18 U.S.C. § 1341.  Paragraph 8 then simply specifies the element of using the mails in furtherance of the previously alleged fraud, stating that Defendants "for the purpose of executing and in furtherance of the above-referenced scheme to defraud and to deprive AGA of the intangible right of honest services and to obtain money by means of false and fraudulent pretenses, representations, and promises, did knowingly and intentionally place" in the mail certain specified documents.  (Doc. No. 39, ¶ 8.)

Moreover, the United States Supreme Court has clarified that the mail fraud statute, despite being written in the disjunctive–prohibiting "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises"–does not define "two independent offenses: (1) 'any scheme or artifice to defraud' and (2) 'any scheme or artifice . . . for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'"  Cleveland v. United States, 531 U.S. 12, 25-26 (2000).  Rather, the second phrase simply modifies the first by making it clear "'that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property.'"  Id. at 26.  Section 1341 thus defines only a single offense, but one that encompasses both "misrepresentation[s] as to some existing fact," as prohibited at common law, and also "'suggestions and promises as to the future.'"  McNally v. United States, 483 U.S. 350, 356-58 (1987).

Thus neither the statute nor the Indictment supports Defendants' attempt to bifurcate the Indictment into two separate theories, one alleging a scheme or artifice to defraud and the other an attempt to obtain money or property by false representations or promises, with the latter confined to "false promises or misrepresentations *as to the future*." (Mem. at 11 (emphasis in

original).)

In any event, the sole issue here is the sufficiency of the Indictment, which by its express terms is not as limited in terms of temporal scope as Defendants suggest.  It does not expressly confine its allegations to prior misrepresentations, but rather alleges that Afremov did not disclose "the payments that <u>were being made</u> to his company ATC by Foremost."  (Doc. No. 39, ¶ 6.)  Such nondisclosures–as opposed to affirmative misrepresentations of fact–do not readily have an equivalent in the realm of future misrepresentations.  But in any event, the Court believes that the Indictment fairly contemplates a continuing fraud in which Afremov was not disclosing the fact that he had been receiving payments from Foremost–that is, that his ongoing deception of AGA was intended to facilitate the continuation of the kickback payments into the future.

Finally, Defendants also argue that the "Indictment does not allege that Afremov obtained any money by means of any false representation, promise, or pretense" as it "alleges that Fischer and Foremost *voluntarily* and *intentionally* provided payments to Afremov."  (<u>Id.</u> at 12.)  But the Indictment alleges, of course, that Fischer was part of the kickback scheme–not the defrauded party–and thus the fact that he voluntarily and intentionally made the payments to Afremov would hardly negate the conclusion that Afremov obtained those payments by deceiving AGA.

### 2.   The Indictment Need Not Be Dismissed For Failure To Plead That the Mailings Were "In Furtherance" Of The Fraud

Defendants next argue that the mailings alleged in the Indictment do not satisfy the requirement that they be in furtherance of, or for the purpose of, the fraud.  (Mem. at 12-13.) Defendants raise three specific arguments: (1) that the mailings were not in furtherance of the scheme to defraud, (2) that the mailings cannot support a theory of mail fraud based on obtaining

money by false pretenses because the "'Indictment does not allege that any of them 'constituted false pretenses and misrepresentations to obtain money,'" and (3) that "the Indictment does not allege that the mailings in Counts 1 through 6 contained any misrepresentations to anyone." (Mem. at 13, 16, 17.)

> **(a)     The Indictment Adequately Alleges That The Mailings Were In Furtherance Of The Fraud**

With respect to the first argument–that the mailings were not in furtherance of the scheme to defraud–Defendants claim that the mailings of invoices and checks relating to Counts 1 through 6 had no effect on the success or failure of the alleged scheme.  (Mem. at 13-15.) They similarly allege that the mailings of the amended tax returns relating to Counts 7 and 8 are not sufficiently related to the alleged scheme because they postdate the completion of that scheme.  (Id.)

Granted, the government must prove that the mails were used in furtherance of the fraud to obtain a conviction.  United States v. Mooney, 401 F.3d 940, 945 (8th Cir. 2005).  But even in the context of supporting a conviction, "[t]o be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme.  It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'" Schmuck v. United States, 489 U.S. 705, 710-11 (1989).  Mail fraud need not "be predicated only on a mailing that affirmatively assists the perpetrator in carrying out his fraudulent scheme." Id. at 711. Moreover, the Court has "specifically acknowledged that 'innocent' mailings–ones that contain no false information–may supply the mailing element." Id. at 715.  Thus, Defendants' argument as to the exact role played by the mailings is legally unfounded.

In any event, the issue here is simply the validity of the Indictment–that is, whether it properly alleges that the mailings were in furtherance of the fraud.  The Indictment alleged that

Defendants, "for the purpose of executing and in furtherance of the above-referenced scheme to defraud, . . . did knowingly and intentionally place and cause to be placed in the United States mail" the eight mailings at issue.  (Doc. No. 39, ¶ 8.)  Whether the government can prove that particular mailings were in fact in furtherance of the fraud is an issue for trial.  See United States v. Castor, 558 F.2d 379, 384 (7th Cir. 1977) ("The question is not whether the indictment particularly alleges sufficient facts from which a jury could find that the mailings charged were in furtherance of the scheme, but rather whether the Government conceivably could produce evidence at trial showing that the designated mailings were for the purposes of executing the scheme.") (reversing dismissal of mail fraud indictment).[5]

### (b)    The Mailings Themselves Need Not Contain Misrepresentations

Defendants' second and third arguments may be dealt with together.  With respect to the second argument–that "the Indictment does not allege that any of [the mailings] 'constituted false pretenses and misrepresentations to obtain money'"–Defendants claim that the "Indictment alleges that Fischer voluntarily and intentionally provided Afremov with the only money the Indictment alleges Afremov 'obtained.'"  (Mem. at 16-17.)  They further contend that "the Indictment does not allege that the mailings in Counts 1 through 6 contained any misrepresentations at all" and that the checks at issue in Counts 1, 2 and 4 cannot contain any such misrepresentations because the Supreme Court has ruled that checks, in and of themselves, are "not a factual assertion at all."  (Mem. at 17 (quoting Williams v. United States, 458 U.S.

---

[5]  For example, with respect to Counts 1 through 6, the government conceivably could introduce evidence that the mailing of invoices from Foremost to AGA and of checks from AGA to Foremost facilitated the fraud simply because the fact of those payments being made was necessarily part and parcel of the fraud, which then culminated in Foremost directing kickback payments to Afremov's personal corporation.

279, 284-85 (1982)).)  Similarly, with respect to their third argument, Defendants claim that

Counts 1 through 6 must be dismissed because they are based on mailings that did not

themselves contain or constitute the false statement or misrepresentation.  (Mem. at 17.)

But there is no such requirement that the mailed material itself contain or constitute the

false statement or misrepresentation.  While the federal mail fraud statutes do not extend to all

fraud claims, but rather are limited to those that use the mails in furtherance of the fraud, neither

are those statutes limited to situations where the mailed matter itself constitutes or contains the

false statement or misrepresentation.  As discussed above, "'innocent' mailings–ones that

contain no false information–may supply the mailing element."  Schmuck v. United States, 489

U.S. 705, 715 (1989).  The use of the mails must simply be "in furtherance of" the fraud, not

necessarily the vehicle by which the misrepresentations themselves are communicated.

Defendants cite the Eighth Circuit's statement that "'[t]o prove mail fraud the

government must show that material misrepresentations were sent through the mail.'" (Mem. at

17 (quoting United States v. Hively, 437 F.3d 752, 764 (8th Cir. 2006)).)  But this shorthand

statement cannot be read literally for the proposition Defendants advance.  The Eighth Circuit

was not addressing that issue in Hively, but rather whether the misrepresentations at issue were

material.  437 F.3d at 764.  This is all the more obvious in light of the fact that the Eighth Circuit

cited the Supreme Court's decision in Neder v. United States for this point, 437 F.3d at 764, and

Neder likewise addressed the issue of whether the materiality of the misrepresentations is an

essential element of mail fraud, 527 U.S. 1, 20 (1999).  Neder does not hold that the

misrepresentation itself must be sent through the mail.  Rather, it simply holds that the fraud

statutes, including those prohibiting mail fraud, "require that a 'scheme to defraud' employ

*material* falsehoods."  Id. (emphasis in original).  In sum, the requirement that the mails be used

"in furtherance" of the fraud does not require that the misrepresentation itself be mailed.

### 3. The Indictment Need Not Be Dismissed For Not Expressly Using The Term "Materiality"

Finally, Defendants argue that the Indictment failed to expressly allege materiality because it "contains no allegations that Afremov made any material misrepresentations or omissions" and "does not even use the word 'material'" in the mail fraud counts.  (Mem. at 18.)

The Government contends that the omission does not require dismissal because the concept of materiality is implicit in the allegation of a scheme to defraud.  (Mem. at 21-22.)  "It is not necessary 'for a particular word or phrase [to] appear in the indictment when the element is alleged 'in a form' [that] substantially states the element.'"  United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998).  Materiality is now "an issue for the jury" and "so long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence.'"  United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001) (explaining that prior to decision in United States v. Gaudin, 515 U.S. 506, 523 (1995), holding that materiality must be submitted to jury as an element of the crime, the Eighth Circuit "considered materiality to be an issue of law for the [district] court" on which to hold a pretrial hearing).

Here, the Indictment, fairly read, sufficiently alleges the charge of mail fraud, including the element of materiality, so as to inform Defendants of the charge against which they must defend and to enable them "to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974).

The false statements or misrepresentations that would have to be proved to the jury to have been material concern Afremov's failure to disclose the kickbacks to his employer, AGA. To be "material" they "must have 'a natural tendency to influence, or [be] capable of

influencing, the decision of the decision-making body to which [they were] addressed.'" <u>United States v. Gaudin</u>, 515 U.S. 506, 509 (1995). It is beyond question that the Indictment contemplates that AGA, had it known that Afremov was taking kickbacks from AGA's supplier, would have found that fact "material." Materiality is thus alleged in a form that substantially states that element of mail fraud.[6] In sum, Defendants have failed to show that Counts 1 through 8 of the Indictment must be dismissed at this juncture.

### B.     The Mail Fraud Statutes Are Not Unconstitutionally Vague

In their next motion, Defendants argue that Section 1346, delineating what they characterize as the "honest services" theory of mail fraud, is unconstitutionally vague, both facially and as applied here. (Mem. at 1-11.) The Government contends that the courts have rejected such challenges because the statute makes "'it reasonably clear at the relevant time that the defendant's conduct was criminal.'" (Mem. at 22-26 (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 267 (1997)).)

---

[6] Defendants' reliance on <u>United States v. Gee</u>, 226 F.3d 885 (7th Cir. 2000), is misplaced. Even if that decision constituted controlling authority here, it ruled that convictions for mail and wire fraud must be reversed where "the government not only failed to allege but also failed to prove that [Defendants] made any false or misleading statements." <u>Id.</u> at 892. The Indictment "merely allege[d] a 'scheme to defraud'" without "alleg[ing] that defendants misrepresented or concealed a material fact in aid of their scheme." <u>Id.</u> at 891 (noting that "the indictment does not use the words 'material,' 'misrepresentation,' or 'concealment'"). Here, in contrast, the Indictment plainly states that "Afremov did not disclose to, and concealed from, AGA Medical and his fellow shareholders and directors, the payments that were being made to his company ATC by Foremost," and that after the payments were uncovered Afremov and Foremost "took affirmative steps to conceal the true nature of the payments." (Doc. No. 39, ¶¶ 6-7.) Insofar as the Indictment does not expressly use the word "material," any such omission is hardly fatal as it is obvious from these allegations that the Indictment is alleging that the failure to disclose the kickback payments would be material to the defrauded entity. While the Government will have to prove this element of mail fraud at trial, there is no basis to dismiss the Indictment on these grounds. <u>Cf.</u> <u>United States v. Brown</u>, 459 F.3d 509, 519 (5th Cir. 2006) ("Violation of the wire-fraud statute requires the specific intent to defraud, i.e., a 'conscious knowing intent to defraud; however, specific intent to defraud need not be charged in the Indictment.").

This Court agrees that the statute is not unconstitutionally vague.  In <u>United States v. Anderson</u>, 2006 WL 1314419 (D. Minn. May 11, 2006), the court rejected both facial and as-applied challenges to Section 1346.  The <u>Anderson</u> court's reasoning is thorough and persuasive and this Court adopts it here.  As the <u>Anderson</u> court explained, the Eighth Circuit has rejected vagueness challenges to Section 1346 where "an employee created a false vendor to deceive his employer, profited from the entity doing business with the employer, and used the mail to carry out the scheme."  <u>Id.</u> at *3 (citing <u>United States v. Easton</u>, 54 Fed. Appx. 242 (8th Cir. 2002)).[7] Such a scenario is entirely analogous to the garden-variety kickback scheme alleged here.

Furthermore, the court in <u>Anderson</u> surveyed the decisions of the other federal circuits, adopted "the comprehensive reasoning" of the Second Circuit in <u>United States v. Rybicki</u>, 354 F.3d 124 (2d Cir. 2002) (en banc), as "extremely persuasive," and concluded that the <u>Rybicki</u> decision was "in alignment with other circuit courts of appeals that have squarely addressed the vagueness issue."  2006 WL 1314419, at *4.[8]  Here, it is difficult, if not impossible, to conclude that Defendants did not reasonably know that the kickback scheme in which they were allegedly involved was in violation of federal criminal law.  <u>See generally</u> "Validity, Construction, and

---

[7] Defendants contend that the Eighth Circuit has "suggested that the statute might be impermissibly vague." (Mem. at 3 (citing <u>United States v. Lamoreaux</u>, 422 F.3d 750, 754 n.3 (8th Cir. 2005)).)  But this comment is "mere *dicta*."  <u>Anderson</u>, 2006 WL 1314419 at *3.

[8] Defendants take issue with the Government's contention that under the Eighth Circuit's approach a defendant challenging Section 1346 but not raising a First Amendment claim may assert only an "as applied" vagueness argument, not a "facial" vagueness argument. (Reply Mem. at 3.)  Defendants' reliance on the Supreme Court's decision in <u>City of Chicago v. Morales</u>, 527 U.S. 41 (1999), is misplaced because "outside the First Amendment context, vagueness challenges will be considered only as applied."  <u>Rybicki</u>, 354 F.3d at 130.  "In other words, where First Amendment overbreadth analysis is not available, a statute will be held unconstitutionally vague 'on its face' only if it is unconstitutionally vague 'as applied' to all circumstances."  <u>Id.</u> at 130-31 (addressing the plurality opinion in the highly fractured <u>Morales</u> decision).

Application of 18 U.S.C.A. § 1346," 172 <u>A.L.R. Fed.</u> 109 (2001) (canvassing the wide array of

cases in which courts have held that Section 1346 has, and has not, been violated).  The

Government has alleged a garden variety type of scheme, <u>cf.</u> <u>United States v. Serafino</u>, 281 F.3d

327 (1st Cir. 2002) (affirming convictions of employees for mail fraud, money laundering and

conspiracy where they instructed their employer's vendors to inflate charges and then "divert the

surplus funds" to defendants or companies owned by one of the defendants), that is unlike the

less conventional schemes that lie at or beyond the outer boundaries of the statute's reach.

> Defendants also seek an application of the Rule of Lenity, claiming that it
>
> forecloses the government from pursuing the construction of § 1346 alleged in the
> Indictment – a construction that would read deprivation of "the intangible right of
> honest services" so broadly as to encompass a 50% corporate owner's mere
> receipt of payments from a vendor without any allegation of actual harm to the
> corporation.

(Mem. at 13.)  Defendants further argue that "Afremov therefore could not have derived 'fair

warning' of the scope of § 1346 from the applicable case law." (<u>Id.</u> at 14.)

But again, Defendants provide no sound authority for dismissing this Indictment before

trial based on the Rule of Lenity.  Rather, they rely largely on cases reviewing convictions after

trial.  (<u>See</u> Mem. at 14.)  Moreover, the court in <u>United States v. Bloom</u>–one of the authorities

cited by Defendants that actually does involve a pretrial dismissal–in fact supports the

Government's position.  In <u>Bloom</u> the court upheld, based in part on the Rule Of Lenity, the

pretrial dismissal of a portion of a count that sought a conviction for mail fraud at the far reaches

of its outer boundaries.  149 F.3d 649, 656-57 (7th Cir. 1998).  But in recognizing such limits, the

court stated that Section 1346 validly extends to situations where "[a]n employee deprives his

employer of his honest services . . . if he misuses his position (or the information he obtained in

it) for personal gain." <u>Id.</u>  This appears to be precisely what the Government alleges here–that

Afremov misused his position at AGA to secure kickbacks from one of AGA's vendors.  At this juncture, the case appears to present a garden variety kickback scheme, which is well known as constituting a violation of the law.  To the extent that any valid question remains as to whether this case presents a proper one for the application of the Rule Of Lenity, resolution of that question must await trial and the development of the particular theory of wrongdoing that the Government might pursue.

### C.    Wharton's Rule Does Not Require A Pretrial Dismissal Of The Conspiracy Count Or The Aiding And Abetting Counts

In their next motion to dismiss, Defendants claim that the conspiracy count must be dismissed because under Wharton's Rule–which prohibits punishing one for conspiring to commit a substantive offense that itself requires the participation of at least two persons–it merges with the underlying substantive offenses.  (Mem. at 1-2.)  In response, the Government notes that Wharton's Rule cannot apply here because the substantive counts do not "require the participation of two or more persons."  (Mem. at 27 (emphasis in original).)

This Court need not decide whether Wharton's Rule applies here so as to preclude a conviction for conspiracy if Defendants would also be convicted of the underlying substantive offenses, because any such issue is premature at this juncture.  As the United States Supreme Court clarified, application of Wharton's Rule must await trial because the problem it seeks to avoid is not an Indictment that simply alleges both conspiracy and the underlying substantive offense, but excessive punishment upon conviction for both:

> We do not consider initial dismissal of the conspiracy charge to be required in such a case.  When both charges are considered at a single trial, the real problem is the avoidance of dual punishment.  This problem is analogous to that presented by the threat of conviction for a greater and a lesser included offense, and should be treated in a similar manner.

Iannelli v. United States, 420 U.S. 770, 786 n.18 (1975) (emphasis added).  Accordingly, any

consideration of whether to apply Wharton's Rule is premature before any determination of guilt has been made on both the substantive charge and either the conspiracy or aiding and abetting charges.

**D.      The Money Laundering Counts Need Not Be Dismissed**

In two separate motions, Defendants claim the money laundering charges, Counts 10 through 14, should be dismissed for the following reasons:  (1) because the Indictment fails to properly allege that the funds Defendants used were derived from the predicate-offense mail fraud charges, and (2) because those charges improperly allege Defendants used the gross receipts, not the net profits.

**1.      The Indictment Is Not Insufficient For Not Including Allegations Regarding The Path Of The Proceeds**

Defendants first contend that the money laundering charges must be dismissed because the Government "must show at least that the money involved in the allegedly criminal transaction came from an account in which the proceeds of the alleged mail fraud were deposited."  (Mem. at 3.)[9]  Defendants claim that the government has not shown "the general path traced by the proceeds" of the mail fraud.  (Id.)

But even in the context of the proof necessary at trial, "the government need not trace each dollar to a criminal source to prove a violation of 18 U.S.C. § 1857."  United States v. Mooney, 401 F.3d 940, 946 (8th Cir. 2005).  In fact, "the Government is not required to trace funds to prove a violation of § 1857."  United States v. Pizano, 421 F.3d 707, 723 (8th Cir. 2005). Thus, the fact that Afremov was "gainfully employed while all of the specified transactions

_____

[9]  Defendants also claim they should be dismissed because the underlying predicate crimes, that is, the mail fraud charges, must be dismissed.  (Mem. at 2-3.)  Because this Court has denied their motion to dismiss the mail fraud counts, this argument affords no basis to also dismiss the money laundering charges.

occurred, and [that] there are any number of other sources from which the money Afremov allegedly used in the specified transactions could have come" (Mem. at 4) does not preclude even a conviction under Section 1957.  Cf. Pizano, 421 F.3d at 723 (rejecting argument of defendant who had accumulated funds from "legitimate sources" that were then commingled with those that were criminally derived); Mooney, 401 F.3d at 946 (same).

Moreover, Defendants–once again–seek to apply at this pretrial juncture the requirements that are imposed only at trial to support a conviction.  E.g. Mooney, 401 F.3d at 946.  Whatever showing might be required to supported a conviction, there is no requirement that the government establish in the Indictment the path of the illegally-obtained funds in this detail.

### 2.    The Indictment Does Not Improperly Refer To Gross Proceeds

In a separate motion, Defendants also argue that the money laundering charges must be dismissed because they allege that Defendants transacted in the gross receipts, rather than the net profits, of the underlying criminal enterprise.  The Indictment does not expressly refer to "gross receipts" or otherwise limit the allegations to any comparable measure, but rather alleges that Defendants "did knowingly engage and attempt to engage in a monetary transaction . . . in criminally derived property" by using "the funds obtained by ATC from Foremost, such property having been derived from" mail fraud.  (Doc. No. 39, ¶ 14 (emphasis added).)

In any event, Defendants' argument is premised, however, on the assumption that the United States Supreme Court will so limit money laundering convictions in a decision not yet rendered.  In United States v. Santos, the Seventh Circuit ruled that Section 1956–one of two federal money laundering statutes prohibiting financial transactions when knowing that the property involved represents the "proceeds" of unlawful activity–requires that those proceeds be the "net profit" rather than the "gross proceeds" of the illegal activity.  461 F.3d 886, 890-91 (7th

Cir. 2006).  The United States Supreme Court recently granted the Government's petition for a writ of certiorari.  United States v. Santos, ___ U.S. ___, 2007 WL 173657 (April 23, 2007). Unless and until the Supreme Court affirms the Seventh Circuit's ruling, however, this court is not bound by the Seventh Circuit's decision.

Moreover, the Seventh Circuit's position represents a minority of one amongst the four federal circuits that apparently have addressed the issue.  Both the Third Circuit and the First Circuit have ruled that "proceeds" means gross receipts.  United States v. Grasso, 381 F.3d 160, 167, 169 (3d Cir. 2004); United States v. Iacaboni, 363 F.3d 1, 4 (1st Cir. 2004).  Most importantly, the Eighth Circuit has also rejected the argument that proceeds should be offset by the expenses incurred in generating the funds.  United States v. Huber, 404 F.3d 1047, 1058 (8th Cir. 2005).  The court expressly clarified that "even if the expenses were legitimately incurred" by Defendants, the expenses should not be deducted from the proceeds.  Id. (citing Grasso, 381 F.3d at 166-69).  Defendants also complain that the Eighth Circuit in Huber cited the Third Circuit's decision in Grasso "without comment."  (Mem. at 4.)  But the Huber court apparently found the issue did not warrant extended analysis or discussion, clearly ruling that "even if the expenses were legitimately incurred *by Huber*, they would not reduce the amount subject to forfeiture."  404 F.3d at 1058 (emphasis in original) (citing Grasso, 381 F.3d at 166-69).

Defendants also attempt to read Huber as having addressed the issue only in the context of forfeiture, not violation of the money laundering statutes.  (Mem. at 4.)  But Defendants fail to provide an adequate reason why the application of the general principle should vary according to the statutory context.  Moreover, the Eighth Circuit has directly ruled on the issue in the RICO arena, holding that "the better view is the one that defines proceeds as the gross receipts of the illegal activity."  United States v. Simmons, 154 F.3d 765, 770 (8th Cir. 1998).  The court

reiterated its position in <u>United States v. Hively</u>, stating that "RICO proceeds are defined as the 'gross proceeds of the illegal activity,' precluding any deduction for expenses."  437 F.3d 752, 763 (8th Cir. 2006) (quoting <u>Simmons</u>, 154 F.3d at 767-70).  As the court explained in <u>Simmons</u>, "[r]eading the word 'proceeds' broadly has the benefit of punishing . . . all convicted criminals who receive income from illegal activity, and not merely those whose criminal activity turns a profit."  154 F.3d at 771.

Granted, as Defendants point out, the legislative history in the RICO context makes clear that Congress intended "proceeds" to encompass gross income.  (Reply Mem. at 5.)  But the lack of any such express legislative history in the present context hardly precludes the same interpretation here.  This Court sees no reason why the Eighth Circuit would take a different position here in this somewhat different but entirely analogous statutory context.

Finally, the issue is one of evidentiary support for a conviction following trial and thus not an appropriate basis for challenging the Indictment before trial.  <u>See, e.g.</u>, <u>Santos</u>, 461 F.3d at 887 (addressing issue on appellate review following conviction); <u>Simmons</u>, 154 F.3d at 766 (same).

**E.	The Forfeiture Allegations Need Not Be Dismissed Or Limited**

In their final dispositive motion, Defendants argue that the forfeiture allegations based on mail fraud should be dismissed and that the forfeiture allegations based on money laundering should be limited to property "involved in" or "traceable to" the offense.  (Mem. at 3.)  More specifically, they argue the forfeiture allegations are faulty for the following reasons:  (1) with respect to mail fraud, the government cannot rely on the civil forfeiture statute "to seek criminal forfeiture in connection with mail fraud that does not affect a financial institution," (2) even if such a forfeiture were permissible, the Indictment's allegations "sweep well beyond" the scope

24

of the civil forfeiture statute's authorization for the forfeiture of "proceeds" of mail fraud, and (3) with respect to the money laundering charges, "only a fraction of" the value of Afremov's home that the government seeks in its entirety "conceivably could be traceable to the alleged money laundering."  (Id.)

The Indictment alleged (1) that Defendants should forfeit, pursuant to Section 981(a)(1)(C), "any property constituting, or derived from, proceeds traceable to" the alleged mail fraud (Doc. No. 39, ¶ 20), (2) that Afremov should forfeit, pursuant to Section 982(a)(1), "all property . . . involved in" the alleged money laundering and "all property traceable to such property" (id., ¶ 21), and (3) that Fischer likewise should forfeit, pursuant to Section 982(a)(1), "all property . . . involved in" the alleged money laundering and "all property traceable to such property" (id., ¶ 22).  Finally, the Indictment alleged that Defendants should forfeit substitute property if any of the "above-described forfeitable property" is not subject to forfeiture for certain specified reasons.  (Id., ¶ 23.)

If a defendant is convicted of mail fraud under Section 1341, the government may seek forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" a violation of Section 1341.  18 U.S.C. § 981(a)(1)(C).  If a defendant is convicted of money laundering under Section 1957, the government may seek forfeiture of "any property, real or personal, involved in such offense or any property traceable to such property."  18 U.S.C. § 982(a)(1).

Section 982 governs criminal forfeitures, which may be obtained as part of the sentencing of a person convicted of money laundering (among other offenses).  18 U.S.C. § 982(a)(1).  Civil forfeitures, in contrast, are governed Section 981.  18 U.S.C. § 981.  Civil forfeitures, however, generally must be pursued in separate civil actions.  28 U.S.C. § 2461(a).  But in 2000, Congress

amended Section 2461 by adding subsection (c), which provided (in relevant part) that if

forfeiture is authorized for a statutory violation for which a person is charged in an indictment

and "no specific statutory provision is made for criminal forfeiture upon conviction, the

Government may include the forfeiture in the indictment" and pursue the forfeiture the same as if

it were a criminal forfeiture governed by Section 982.  28 U.S.C. § 2461(c) (2000) ("the bridging

statute").[10]

The Government generally argues that Defendants' arguments are premature as the

Indictment provides them with all the notice to which they are due.  (Mem. at 32.)  The

Government further argues that the particular forfeitures it seeks are fully authorized by statute.

(Id. at 34-41.)

### 1.    The Civil Forfeiture Statute Is Not Limited To Mail Fraud Affecting Financial Institutions

With respect to Defendants' first argument, Defendants explain that in certain

circumstances the Government may convert civil forfeiture into the "functional equivalent of

criminal forfeiture," thereby allowing it "to seek forfeiture directly from the defendant at the

sentencing phase of the criminal case" rather than having to pursue forfeiture separately in a civil

in rem action.  (Mem. at 4.)  Defendants contend that this procedure is not available here,

however, because–under the version of the statute in effect at the time the alleged mail fraud

occurred–the statute permitting this direct forfeiture procedure in criminal cases was applicable

only where "no specific statutory provision is made for criminal forfeiture upon conviction," 28

U.S.C. § 2461(c) (2000), but that here "[c]riminal forfeiture for violations of § 1341 is

specifically addressed by 18 U.S.C. § 982(a)(2)(A)," (Mem. at 6).  Defendants further note that

_____

[10] The 2006 amendment of Section 2461(c) does not govern here.

Section 982(a)(2)(A) "permits forfeiture only if the mail fraud 'affect[ed] a financial institution,'" but that there is no such allegation here.  (Mem. at 6-7.)

Defendants contend that the "better view" of Section 2461(c) "is to 'read § 2461(c) as requiring criminal forfeiture only in those cases where Congress had not specifically considered whether, and to what extent, to authorize criminal forfeiture.'"  (Mem. at 7 (citing <u>United States</u> <u>v. Day</u>, 416 F. Supp. 2d 79, 86-87 (D.D.C. 2006)).)  Defendants acknowledge, however, that some courts have rejected this reading of the statute and thus permit "criminal forfeiture for general mail fraud," that is, mail fraud not affecting a financial institution.  (<u>Id.</u> at 7.)[11]  For example, in <u>United States v. Edelkind</u>, the First Circuit concluded that "Congress intended for section 2461 to apply in [such] situation[s] because "[f]ar from wanting to limit the substantive reach of the criminal forfeiture statute, Congress made clear in enacting the bridging statute [Section 2461(c)] that it hoped to encourage the use of criminal forfeiture procedures, with their greater protections, 'whenever any form of forfeiture is otherwise authorized by statute.'"  467 F.3d 791, 799 (1st Cir. 2006).

As the Third Circuit explained in <u>United Sates v. Vampire Nation</u>, the plain language of the statute "permits criminal forfeiture for general mail fraud because (1) 18 U.S.C. § 981(a)(1)(C) authorizes civil forfeiture for general mail fraud; and (2) no statutory provision specifically authorizes criminal forfeiture for general mail fraud."  451 F.3d 189, 199 (3d Cir. 2006).  The court also explained that the legislative history regarding various changes in 2000 to the forfeiture statutes supported this statutory construction.  <u>Id.</u> at 200-01.  "Congress's expansion of the crimes for which civil forfeiture is available taken in conjunction with its

---

[11]  Defendants note that "[t]his issue recently was argued before the Eighth Circuit in *United States v. Jennings* . . . and is currently awaiting decision."  (Mem. at 7 n.2.)

decision to enact 28 U.S.C. § 2461(c), which broadened the range of crimes for which criminal

forfeiture was available, can only be viewed as intent to make criminal forfeiture essentially

coextensive with civil forfeiture."  Id. at 201.[12]

In sum, until further guidance is available from the Eighth Circuit, this Court adheres to

the view adopted by the other circuits that have squarely addressed the issue, that is, that

criminal forfeiture is available for mail fraud that does not affect a financial institution.

### 2.    The Indictment Need Not Trace The Path Of The Proceeds

Defendants' second and third arguments both address issues of the actual scope of

particular forfeitures that could be permissible following conviction.  Their second argument is

that the Indictment's forfeiture allegations exceed the scope of forfeiture for mail fraud, as

permitted by Section 981(a)(1)(C), the civil forfeiture statute that would apply by virtue of

Section 2461(c), because the property the government seeks is not derived from proceeds

traceable to the alleged mail fraud.  (Mem. at 9.)  They claim (1) that the "Indictment does not

explain how" the real property specified in the Indictment "constitutes or is derived from

proceeds of the alleged mail fraud"; (2) that the Indictment does not establish the necessary link

between the alleged mail fraud and the "compensation and related payments obtained by

Afremov from AGA Medical in or after August 1998 as a consequence of his fiduciary position"

to support the particular forfeiture that the government seeks; and (3) that the "narrow"

definition of "proceeds" does not include "'the direct costs incurred in providing the goods or

services,'" which "were not illicit goods" but rather "legal goods that AGA needed–and *used*–for

_____

[12]  Defendants' reliance on United States v. Day, 416 F. Supp. 2d 79 (D.D.C. 2006), as
reflecting the contrary "better view" is misplaced.  In Day, the court relied in turn on the district
court decision in United States v. Croce, 345 F. Supp. 2d 492 (E.D. Pa. 2004).  Day, 416 F.
Supp. 2d at 86-87.  But in Vampire Nation, the Third Circuit expressly rejected the construction
of the statute advocated by Croce.  451 F.3d at 200.

its" business.  (Mem. at 9-12 (emphasis in original).)

But all of these issues are inappropriate at this juncture and must await resolution at trial and sentencing, assuming the government obtains a conviction, as they pertain to the exact measure of what property is subject to forfeiture and such determinations are made only at trial or afterwards.  See Fed. R. Crim. P. 32.2(b)(1) (providing that upon a verdict, finding, or acceptance of a plea of guilty, "the court must determine what property is subject to forfeiture under the applicable statute"); id. 32.2(b)(4) (providing that upon party's request in a jury trial, "the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant").  "For example, if the defendant disputes the government's allegation that a parcel of real property is traceable to the offense, the defendant would have the right to request that the jury hear evidence on that issue, and return a special verdict, in a bifurcated proceeding that would occur after the jury returns the guilty verdict."  3C Wright et. al, Federal Practice and Procedure Rule 32.2 Adv. Cmte. Notes (2000 Adoption) (2007).  Defendants' arguments raise fact issues that are not amenable to disposition on a pretrial motion to dismiss the Indictment.

For purposes of evaluating the sufficiency of the forfeiture allegations in an indictment, the Court notes that the Government need only provide notice of its intent to seek forfeiture. Under the current version of Rule 7, to obtain the entry of a judgment of forfeiture in a criminal proceeding, the indictment must provide "notice that the defendant has an interest in property that is subject to forfeiture in accordance with the applicable statute."  Fed. R. Crim. P. 7(c)(2) (2000).  As thus amended in 2000, the government can satisfy "its notice requirement by merely tracking the language of the relevant forfeiture statute and alleging that the defendant has an interest in property authorized to be forfeited under that provision."  J. Gurule et al., The Law of

<u>Asset Forfeiture</u> § 3-2(b) (2d ed. 2004).  Thus there is no longer any issue–as existed before 2000 when the rule required that the indictment "allege the extent of the interest or property subject to forfeiture"–of whether the government must "identify the specific property intended to be forfeited."  <u>Id.</u>

Under the 2000 amendments to the criminal rules regarding forfeiture, subdivision (a) of Rule 32.2 "is not intended to require that an itemized list of the property to be forfeited appear in the indictment or information itself."  3C Wright et. al, <u>Federal Practice and Procedure</u> Rule 32.2 Adv. Cmte. Notes (2000 Adoption) (2007).  <u>Accord</u> 3 Wright et. al, <u>Federal Practice and Procedure</u> § 545 (3d ed. 2004) ("[Rule] 32.2(a) is not intended to require that an indictment or information contain an itemized list of all property to be forfeited."); 3D <u>Federal Practice and Procedure: Criminal Rules Quick Reference Guide</u> (2007) (stating that the "notice that must be provided in the indictment . . . need not describe in detail the property subject to forfeiture, or the defendant's interest in it.  It is only required that the charges put the defendant on notice that the government will seek to forfeit everything subject to forfeiture under the applicable statute.").  Accordingly, Rule 7(c) "does not require a substantive allegation in which property subject to forfeiture, or the defendant's interest in the property, must be described in detail."  3C Wright et. al, <u>Federal Practice and Procedure</u> Rule 32.2 Adv. Cmte. Notes (2000 Adoption) (2007).

Here, the Indictment included separate "Forfeiture Allegations" that provided more than adequate notice of the fact that the Government would pursue forfeiture of property traceable to Defendants' violations of the mail fraud and money laundering statutes.  The Indictment separately delineates the forfeitures that the Government seeks in terms of the underlying offenses and the particular Defendants and specifies the statutory authority on which it relies for each forfeiture.  (Doc. No. 39, ¶¶ 19-23.)

The requirements that Defendants seek to impose on the Indictment are–once again–issues of proof for trial, not matters that must be alleged, much less somehow proved, in the Indictment.  Moreover, it is clear that "criminal forfeiture is an element of the sentence," that is, "punishment," not an element of the offense.  <u>Libretti v. United States</u>, 516 U.S. 29, 41 (1995).  Thus, as long as the Indictment satisfies the basic notice function of Rule 7(c)(2), it is "insulated from dismissal."  <u>United States v. Di Gilio</u>, 667 F. Supp. 191, 198 (D.N.J. 1987).  The burden of the government "to establish by competent evidence that the assets to which they refer are in fact subject to forfeiture" is imposed only "[a]t trial."  <u>Id.</u>  "This is manifestly a question of fact, properly left to the jury, not something we can resolve on the pleadings."  <u>United States v. Dote</u>, 150 F. Supp. 2d 935, 943 (N.D. Ill. 2001).

### 3.      The Forfeiture Allegations Regarding Afremov's Residence Need Not Be Dismissed Or Limited

Defendants' final argument with respect to the forfeiture allegations is that the applicable statutes do not permit the forfeiture of Afremov's entire residence under Section 982(a)(1) because "the Indictment is entirely devoid of any explanation regarding how the home is linked to the payments identified in Counts 11 through 14," and even if some portion of the home were traceable, "the entire home still would not be forfeitable" because forfeiture "would be limited to . . . the value added to the home through Afremov's alleged use of the *corpus*."  (Mem. at 14-15.)

The Government counters by arguing that it "need not provide a detailed explanation at this juncture as to how defendant's residence is linked to the money laundering charges."  (Mem. at 40.)  Moreover, the Government contends that forfeiture based on money laundering "is broader in scope" than a proceeds-based forfeiture, such that "[w]here a defendant's property is involved in a money laundering offense, the entire property is subject to forfeiture."  (<u>Id.</u> at 40-41.)

31

Again, the precise measure of what property is actually subject to forfeiture for money laundering must await proof at trial.  Section 982(a)(1) permits forfeiture of "any property, real or personal, involved in such offense, or any property traceable to such property."  18 U.S.C. § 982(a)(1).  Unlike the situation addressed by the court in United States v. Grass, 274 F. Supp. 2d 648 (M.D. Pa. 2003), here the allegations are not insufficient, as a matter of law, to support the forfeiture the Government seeks.[13]  Where real property has been used to facilitate money laundering, the entirety of a single tract of such property is subject to forfeiture.  United States v. Myers, 21 F.3d 826, 830 (8th Cir. 1994) ("The entire farm was forfeitable because, as the jury determined, part of it was used to facilitate the drug trafficking and money laundering offenses.").  Ultimately, however, whether the Government can prove that Afremov's residence is property "involved in" money laundering or property "traceable to such property" must await trial.

## III.   CONCLUSIONS

There is no basis at this juncture to dismiss Counts 1 through 8.  The mail fraud statutes are not unconstitutionally vague and it is premature to apply the Rule of Lenity.  There is no basis to dismiss before trial the conspiracy charges based on Wharton's Rule.  Nor is there any basis to dismiss the money laundering counts before the Government has had the opportunity to present and prove its case.  Finally, it is likewise premature to dismiss the forfeiture allegations

---

[13]  In Grass, the court dismissed the count that included the forfeiture allegations based on Section 982(a)(2)(A), which requires that the violation of Section 1343 "affect[ed] a financial institution."  18 U.S.C. 982(a)(2)(A).  The court noted that this provision had been construed to require that the wire fraud had "affected a financial institution" in an adverse manner.  Id. at 653.  But in Grass, the Indictment alleged only that there was a mere transfer of funds, which does not affect a financial institution in any adverse manner.  Id.  Therefore, the Count containing the forfeiture allegations "is facially invalid because it fails to allege a necessary element of the offense."  Id. at 659.  Here, in contrast, there is no lack of an allegation that is required as a matter of law to support a particular forfeiture allegation in the indictment.

prior to trial.

## IV.    RECOMMENDATIONS

Based on the foregoing, and all the files, records and proceedings herein, IT IS

HEREBY RECOMMENDED that:

1.     Defendant's Motion To Dismiss Counts 1 Through 8 of the Superseding

Indictment (Doc. No. 73) be DENIED,

2      Defendant's Motion To Dismiss Counts 1 Through 8 of the Superseding

Indictment as Unconstitutionally Vague and Barred By the Rule of Lenity (Doc.

No. 76) be DENIED,

3.     Defendant's Motion To Dismiss Conspiracy and Aiding and Abetting Charges

(Doc. No. 79) be DENIED,

4.     Defendant's Motion To Dismiss Money Laundering Charges In The Superseding

Indictment (Doc. No. 86) be DENIED,

5.     Defendant's Motion To Dismiss Money Laundering Charges Based on United

States v. Santos (Doc. No. 111) be DENIED, and

6.     Defendant's Motion To Dismiss and Limit the Forfeiture Allegations (Doc. No.

89) be DENIED.


Dated:  June 25, 2007

                                        s/ Susan Richard Nelson
                                       SUSAN RICHARD NELSON
                                       United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing
with the Clerk of Court and serving all parties by July 13, 2007, a writing which specifically
identifies those portions of this Report to which objections are made and the basis of those
objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting

party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.