# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 06-196 (JRT/SRN) |
| Plaintiff, | |
| v. | |
| | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| MICHAEL ROMAN AFREMOV, FREDERICK JAMES FISCHER, and FOREMOST MACHINING COMPANY, INC., | |
| Defendants. | |

Joseph T. Dixon, III, and Henry J. Shea, Assistant United States Attorneys, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Joseph G. Petrosinelli and Craig D. Singer, **WILLIAMS & CONNOLLY L.L.P.**, 725 Twelfth Street NW, Washington DC, 20005.

Ronald I. Meshbesher, **MESHBESHER & SPENCE, LTD**, 1616 Park Avenue South, Minneapolis, MN 55404; Kevin J. Short, **SHORT LAW FIRM**, 150 South Fifth Street, Suite 3260, Minneapolis, MN 55402; for defendants Frederick Fischer and Foremost Machining Company, Inc.

Defendant Michael Afremov ("Afremov") filed six pretrial motions seeking dismissal of the Superseding Indictment on various grounds. In a Report and Recommendation dated June 25, 2007, United States Magistrate Judge Susan R. Nelson recommended that this Court deny Afremov's motions. Afremov filed objections to the Report and Recommendation. The Court has conducted a *de novo* review of the

objections under 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b).  For the reasons set forth below, the Court adopts the Report and Recommendation and denies Afremov's motions.

## BACKGROUND

The prosecution filed an 18-count Superseding Indictment (the "Indictment") against defendants alleging mail fraud, conspiracy, money laundering, and false tax returns.[1]  According to the allegations in the Indictment, defendant Afremov was Vice President of Operations of AGA Medical, a Minnesota corporation that developed and manufactured medical devices.  Afremov was responsible for selecting medical device vendors for AGA Medical.  Afremov selected defendant Foremost Machining Company ("Foremost") as the sole source vendor to AGA Medical for certain medical parts.  Foremost's president was defendant Frederick Fischer ("Fischer").

The prosecution alleges that, from August 1998 until August 2002, Fischer directed Foremost to make periodic kickback payments to Advanced Technologies Corporation ("ATC"), a Minnesota corporation owned by Afremov and his wife.  Foremost made over $1.2 million in payments to ATC during this time.  Afremov allegedly withdrew these funds from ATC and used them for his personal benefit.

---

[1] On August 7, 2007, the prosecution filed a Second Superseding Indictment, which added two sentences to the prior indictment.  Paragraph 3 of the Second Superseding Indictment now alleges that Afremov owed duties to AGA Medical and its shareholders "under Chapter 302A of the Minnesota Business Corporation Act."  Paragraph 6 now alleges that "The undisclosed information of the payments was material to AGA Medical and its other shareholders."  These changes are discussed below to the extent they have any impact on Afremov's motions to dismiss.

Afremov[2] filed the following six dispositive pre-trial motions: 1) Motion to Dismiss Counts 1 Through 8 of the Superseding Indictment; 2) Motion to Dismiss Counts 1 through 8 of the Superseding Indictment as Unconstitutionally Vague and Barred by the Rule of Lenity; 3) Motion to Dismiss Conspiracy and Aiding and Abetting Charges; 4) Motion to Dismiss Money Laundering Charges in the Superseding Indictment; 5) Motion to Dismiss Money Laundering Charges Based on *United States v. Santos*; and 6) Motion to Dismiss and Limit the Forfeiture Allegations.   In a Report and Recommendation dated June 25, 2007, the Magistrate Judge denied all of Afremov's motions.  Afremov timely objected to the Report and Recommendation with respect to each of the six motions.

## ANALYSIS

## I.   MOTION TO DISMISS COUNTS 1 THROUGH 8 OF THE SUPERSEDING INDICTMENT

Afremov seeks dismissal of the eight mail fraud counts on grounds that the Indictment fails to set forth a "cognizable scheme to defraud," that the "mailing" element as alleged is legally insufficient, and that the Indictment fails to allege materiality.  The Court addresses each argument in turn.

---

[2] The Magistrate Judge granted the motion of defendants Fischer and Foremost to join in the motions submitted by Afremov.

## A.     Scheme to Defraud

Afremov characterizes the Indictment as presenting two different "scheme to defraud" theories: first, that defendants defrauded AGA Medical and deprived it of an intangible right to honest services, and second, that defendants obtained money by false and fraudulent pretenses, representations, and promises, by use of the mails.  According to Afremov, Counts 1 through 8 of the Indictment are deficient because they fail to allege the essential elements of mail fraud with respect to either of the two "scheme to defraud" theories.

The mail fraud statute provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service . . . shall [be guilty of mail fraud].

18 U.S.C. § 1341.  As to the first purported "scheme to defraud" theory, Afremov contends that the mail fraud charges must be dismissed because they fail to allege that the defendants intended to harm, or in fact caused tangible harm to, AGA Medical.  In *United States v. Jain*, 93 F.3d 436, 441-42 (8th Cir. 1996), the Eighth Circuit discussed the scheme to defraud offense in the honest services context, noting that the "essence of a scheme to defraud is an intent to harm the victim."  Absent a showing of actual harm, "'the government must produce evidence independent of the alleged scheme to show the defendant's fraudulent intent.'"  *Id.* at 442 (quoting *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994)); *see also United States v. Lamoreaux*, 422 F.3d 750, 754 (8th

Cir. 2005) (stating that "proof of actual financial harm to the victim is highly relevant in distinguishing criminal fraud from a mere breach of fiduciary duty").

Paragraph 2 of the Indictment charges that the defendants "did knowingly and intentionally execute a scheme to defraud and to deprive another of the intangible right of honest services, and to obtain money by means of false and fraudulent pretenses, representations, and promises, by use of the mails." (Second Super. Indict. ¶ 2.) These allegations are not deficient merely because they fail to allege that AGA Medical or its shareholders suffered actual harm. Indeed, consistent with the Eighth Circuit cases cited above, Paragraph 2 of the Indictment alleges the defendants acted "knowingly and intentionally" to "defraud" and "deprive" AGA Medical and its shareholders. This is the very "essence" of a scheme to defraud. *See Jain*, 93 F.3d at 442. While the prosecution must ultimately show evidence of defendants' fraudulent intent independent of the scheme to defraud, or evidence of actual harm to AGA Medical and its shareholders, these are issues for the jury to resolve at trial, not questions that implicate the sufficiency of the Indictment. *See Hamling v. United States*, 418 U.S. 87, 117 (1974); Fed. R. Crim. P. 7(c). As such, the Court finds that the allegations in the Indictment adequately set forth the elements of mail fraud and fairly inform the defendants of the charges against them.

Afremov also attacks the sufficiency of the Indictment on grounds that it fails to plead Afremov's violation of a specific duty to AGA Medical and its shareholders. The Court finds that the Indictment provides Afremov with sufficient notice of an alleged garden-variety kickback scheme. As such, the Indictment's failure to set forth alleged

violations of a precise legal duty to AGA Medical is not fatal. Moreover, the Second Superseding Indictment now alleges that Afremov owed duties pursuant to Chapter 302A of the Minnesota Business Corporation Act. Accordingly, Afremov's motion to dismiss the Indictment on this basis is denied.

Afremov characterizes the Indictment as presenting a second and distinct "scheme to defraud" theory, namely, that defendants obtained money by false and fraudulent pretenses, representations, and promises, by use of the mails. According to Afremov, this second "scheme to defraud" theory requires allegations of "a false representation about the future," and is thus distinct from the honest services theory discussed above. (Afremov's Objections at 5.) Because the Indictment sets forth no allegations of affirmative misrepresentations about the future, the argument goes, the mail fraud charges should be dismissed with respect to this second "scheme to defraud" theory.

The Court disagrees with Afremov's characterization of the Indictment as presenting two distinct theories, each requiring a unique set of allegations in order to withstand dismissal. The Supreme Court, construing the text of § 1341, expressly rejected the argument that § 1341 creates two independent offenses, one for a "scheme or artifice to defraud," the other for a "scheme or artifice . . . for obtaining money or property . . . ." *Cleveland v. United States*, 531 U.S. 12, 25-26 (2000). Rather, the Court concluded that "the second phrase simply modifies the first by 'ma[king] it unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property.'" *Id.* (quoting *McNally v. United States*, 483 U.S. 350, 359 (1987)). As such, Afremov's attempt to compartmentalize the mail fraud

charges into two distinct legal "theories," requiring dismissal of the charges with respect to the second theory for lack of supporting allegations, is belied by the Supreme Court's holding in *Cleveland*. Even assuming that the Indictment fails to set forth allegations of future misrepresentations,[3] the absence of such allegations is not fatal to the Indictment because the mail fraud charges adequately set forth the elements of the offense and fairly inform the defendants of the pending charges. Accordingly, Afremov's motion to dismiss the mail fraud charges on this basis is denied.

### B.    Legal Sufficiency of the "Mailing" Element

Afremov next argues that the mailings set forth in the Indictment are legally insufficient because they are not alleged to be in furtherance of the scheme to defraud. Afremov contends that the mailings alleged in the Indictment constitute legitimate payments from AGA Medical to Foremost for valuable products received by AGA Medical. Because the mailings alleged in the Indictment are not themselves the alleged kickback payments at the core of the scheme to defraud, Afremov argues that the mail fraud counts must be dismissed.

The federal mail fraud statute reaches only "those limited instances in which the use of the mails is a *part* of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." *Schmuck v. United States*, 489 U.S. 705, 710 (1989) (emphasis added). As noted by the Supreme Court in *Schmuck*, the use of the mails need

---

[3] The Magistrate Judge determined that the Indictment itself is not confined to allegations of prior misrepresentations, and that Afremov's alleged failures to disclose do not fit neatly within the rubric of "future misrepresentations." While the Court need not decide this issue, the Court agrees with the Magistrate Judge's analysis of the sufficiency of the mail fraud charges.

not be an "essential element" of the scheme, but may simply be "incidental to the scheme" or a "step in [the] plot." *Id.* at 710-11 (internal citations omitted). In *Schmuck*, the defendant engaged in a scheme to defraud purchasers of automobiles by turning back the odometer readings of used cars and selling the cars at inflated prices to used car dealers, who in turn sold the cars to their customers. *Id.* at 712. The Court determined that the mailings of title-registration forms by unwitting car dealers following the sale of a used car satisfied the mailing element of the mail fraud offense because it was a "prerequisite" for completing the resale. *Id.* at 707.

As in *Schmuck*, the alleged mailings between AGA Medical and Foremost are not themselves the alleged kickback payments. But they constitute a necessary "step in [the] plot," *id.* at 711, because without the payments from AGA Medical to Foremost there would be no kickback payments from Foremost to ATC. Defendants cite to the Eighth Circuit decision in *United States v. Pintar* for the proposition that the requisite mailings are legally insufficient because they represent legitimate payments for invoices. 630 F.2d 1270, 1280 (8th Cir. 1980). However, that case held only that the prosecution had failed as an evidentiary matter to prove that the alleged mailings were in furtherance of the scheme to defraud. *See id.* ("The evidence shows that the purpose of the mailings was to arrange for the funding of legitimate Commission work and to provide funds for salaries and other governmental activities."). Whether the prosecution can ultimately prove that the mailings in question were in furtherance of the scheme to defraud is an issue for trial, not a basis upon which to challenge the Indictment. The Court finds that the alleged

mailings are legally sufficient to satisfy the mailing element in the mail fraud offenses. Afremov's motion to dismiss on this basis is denied.

### C.    "Materiality" of the Mail Fraud Counts

Finally, Afremov contends that the mail fraud counts must be dismissed from the Indictment because they fail to allege that the fraudulent representations were "material." The Second Superseding Indictment now alleges "materiality," stating "The undisclosed information of the payments was material to AGA Medical and its other shareholders." (Second Super. Indict. ¶ 6.)  Accordingly, that portion of Afremov's motion premised on the absence of a "materiality" element is denied as moot.

## II.    MOTION TO DISMISS COUNTS 1 THROUGH 8 OF THE INDICTMENT AS UNCONSTITUTIONALLY VAGUE

Afremov next argues that the mail fraud charges should be dismissed because 18 U.S.C. § 1346 is unconstitutionally vague both on its face and as applied to the alleged conduct in this case.  Under § 1346, "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."   18 U.S.C. § 1346.

A criminal statute must "'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'"  *United States v. Orchard*, 332 F.3d 1133, 1137-38 (8th Cir. 2003) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).  A party may challenge a statute on vagueness grounds by arguing that the statute is vague as applied to the relevant conduct at issue, or that the statute is facially

vague.  *See Woodis v. Westark Cmty. Coll.*, 160 F.3d 435, 438-39 (8th Cir. 1998).  In an as-applied vagueness challenge, a party who has notice of the criminality of his own conduct from the challenged statute may not attack it on grounds that the statute does not give fair warning to other conduct not at issue in the case.  *Parker v. Levy*, 417 U.S. 733, 756 (1974).  In a facial vagueness challenge, courts generally uphold a statute unless it is "impermissibly vague in all of its applications."  *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494-95 (1982).  However, vagueness challenges that do not involve the First Amendment must be examined "'in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'"  *Woodis*, 160 F.3d at 438-39 (quoting *Chapman v. United States*, 500 U.S. 453, 467 (1991)).[4]

The Magistrate Judge rejected Afremov's argument based on a recent decision in *United States v. Anderson*, 2006 WL 1314419 (D. Minn. May 11, 2006).  In *Anderson*, the Court rejected a vagueness challenge to § 1346,[5] relying on *United States v. Easton*,

---

[4]  Afremov cites *City of Chicago v. Morales*, 527 U.S. 41, 55-56 (1999), for the proposition that facial vagueness challenges need not be limited to statutes that implicate First Amendment concerns.  A plurality in *Morales* rejected the vagueness standard articulated by the Supreme Court in *United States v. Salerno*, 481 U.S. 739 (1987), which allowed facial challenges only to statutes involving the First Amendment.  While the Eighth Circuit has not expressly decided whether the *Morales* plurality opinion imposes a new framework for evaluating facial vagueness challenges, the Second Circuit recently determined that *Morales* did not impose a new standard allowing facial challenges outside of the First Amendment context.  *United States v. Rybicki*, 354 F.3d 124, 131 (2d Cir. 2003) (en banc).  The Court finds the *Rybicki* opinion persuasive, and adheres to the Eighth Circuit's vagueness standard as articulated in *Woodis*, 160 F.3d at 438-39.  Because Afremov's vagueness challenge to § 1346 does not implicate First Amendment concerns, the Court addresses vagueness only as it applies to Afremov's alleged conduct in this case.

[5]  While the *Anderson* opinion does not distinguish between facial and as-applied vagueness challenges, the Court's analysis as well as its reliance on *Rybicki* make clear that the Court found that  § 1346 was not vague as it applied to the defendant's conduct in that case.

54 Fed. Appx. 242 (8th Cir. 2002) and *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2002) (en banc).   The defendant in *Easton* argued that his conviction under § 1346 was plain error because the statute is impermissibly vague.  54 Fed. Appx. at 244.  The Eighth Circuit disagreed, finding that § 1346 was not unconstitutionally vague when applied to "a case in which two Gateway employees and their wives created a false-front vendor with the intent to deceive Gateway about the vendor's ownership, to profit from doing business with Gateway, and to use the mail to carry out this scheme."  *Id.*  In *Rybicki*, the defendants used the mails to induce insurance adjusters to secretly expedite insurance claims in order to advance their own interests in receiving payments from the defendants. 354 F.3d at 142.  The Second Circuit, following an exhaustive examination of the history of § 1346, concluded that "[a]t the end of the day, we simply cannot believe that [defendants] did not know that they were courting prosecution and conviction for mail and wire fraud when they undertook to use the wires and the mails . . . to pay off insurance adjustors, while assiduously covering their tracks."  *Id.*

Similarly here, the Indictment sets forth a straightforward kickback scheme not unlike those examined in *Easton* and *Rybicki*.   The Court finds it implausible that defendants could not have known they were "courting prosecution," *id.*, by engaging in the kickback scheme alleged in the Indictment.   As such, the Court agrees with the Magistrate Judge that § 1346 is not unconstitutionally vague as applied to the alleged conduct in this case.

Afremov contends that the Eighth Circuit has "suggested" that the statute might be impermissibly vague.  *See United States v. Lamoreaux*, 422 F.3d 750, 754 n.3 (8th Cir.

2005).  This argument was squarely rejected in *Anderson*, 2006 WL 1314419, at *3, and the Court rejects it here.  The defendant in *Lamoreaux* did not challenge § 1346 on vagueness grounds, and the cited footnote is of no precedential value.  Moreover, the Court disagrees that the footnote suggests that § 1346 might be unconstitutionally vague.  Rather, *Lamoreaux* makes note of a rather unique argument presented in the *Rybicki* dissent that disagreement among the circuits as to the requisite intent under § 1346 is itself evidence of the statute's vagueness.  *See Rybicki*, 354 F.3d at 162-63 (Jacobs, J., dissenting).  But as the majority in *Rybicki* pointed out, "No circuit has ever held, as the dissent would, that section 1346 is unconstitutionally vague."  *Id.* at 143.  In sum, Afremov's argument that § 1346 is unconstitutionally vague fails, and his motion to dismiss on this basis is denied.

Afremov also argues that § 1346 is ambiguous, that any such ambiguity must be resolved in favor of lenity, and that the rule of lenity requires dismissal of the mail fraud counts in this case.  The rule of lenity limits the expansion of criminal statutes by means of defining essential terms or elements of wrongful conduct to include "constructive" offenses or offenses not intended by Congress.  *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005).  However, the rule of lenity is not applicable unless there is a grievous ambiguity or uncertainty in the language or structure of the statute.  *United States v. Clawson*, 408 F.3d 556, 558-59 (8th Cir. 2005).  Similar to the void for vagueness doctrine, the rule of lenity "ensure[s] both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability." *Crandon v. United States*, 494 U.S. 152, 158 (1990).

The Magistrate Judge determined that the rule of lenity does not require dismissal because the Indictment alleges conduct that falls squarely within an appropriately limited reading of § 1346.  The Court agrees.  In *United States v. Bloom*, the Seventh Circuit addressed a similar challenge to § 1346.  149 F.3d 649, 656 (7th Cir. 1998).  Applying the rule of lenity, which "requires doubts to be resolved against criminalizing conduct," the court in *Bloom* construed § 1346 as limited to situations in which "[a]n employee deprives his employer of his honest services . . . if he misuses his position (or the information he obtained in it) for personal gain."  *Id.*  Because the defendant's alleged conduct did not fall within this limited construction of § 1346, *Bloom* concluded that the mail fraud charges must be dismissed as to that conduct.  Here, however, the prosecution alleges that Afremov misused his position at AGA Medical to secure kickbacks from one of its vendors.  Unlike the conduct in *Bloom*, then, a construction of § 1346 that is appropriately limited by the rule of lenity easily encompasses the defendants' alleged conduct in this case.  The Court concludes that the rule of lenity does not require dismissal of Counts 1 through 8 of the Indictment.

## III.   MOTION TO DISMISS CONSPIRACY AND AIDING AND ABETTING CHARGES

Afremov next argues that Count 9 of the Indictment, which alleges conspiracy to commit mail fraud, must be dismissed under Wharton's Rule.  Wharton's Rule is an exception to the traditional view that a "conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act."  *Iannelli v. United States*, 420 U.S. 770, 777, 779 (1975).  The "classic Wharton's

Rule offenses – adultery, incest, bigamy, dueling – are crimes that are characterized by the general congruence of the agreement and the completed substantive offense." *Id.* at 782. As such, Wharton's Rule "applies only to offenses that require concerted criminal activity, a plurality of criminal agents." *Id.* at 785; *United States v. Cerone*, 830 F.2d 938, 945 (8th Cir. 1987) (stating that Wharton's Rule requires merger of the substantive offense and the conspiracy "when the substantive crime requires two or more persons for its commission").

The Court finds that Wharton's Rule does not support pretrial dismissal of the conspiracy count. The Supreme Court in *Iannelli* explicitly stated, "We do not consider initial dismissal of the conspiracy charge to be required [when Wharton's Rule applies]. When both charges are considered at a single trial, the real problem is the avoidance of dual punishment." *Iannelli*, 420 U.S. 786 n.18. Afremov characterizes this statement as dicta on grounds that the offense charged in *Iannelli* was on post-conviction appeal and was not ultimately subject to Wharton's Rule. Afremov points to another portion of *Iannelli* in which the Court states that "[t]he classic formulation of Wharton's Rule requires that the conspiracy indictment be dismissed before trial." *Id.* at 774. However, in the context of that statement, the Court went on to describe a split among federal courts regarding the appropriate application of Wharton's Rule, including whether the Rule required an initial dismissal of the indictment. *Id.* In light of this divergence of views among the courts, *Iannelli*'s thorough explication of Wharton's Rule was intended to provide guidance to lower courts on the proper scope and application of Wharton's Rule.

Even if Wharton's Rule provided Afremov with an adequate legal basis for pre-trial dismissal of the conspiracy charge, however, the Court finds that Wharton's Rule is inapplicable to the mail fraud charges alleged in the Indictment.  As discussed above, the Rule applies only where the underlying substantive offense "requires two or more persons for its commission."  *Cerone*, 830 F.2d at 945.  Although the scheme to defraud contained in the Indictment alleges kickback payments between Fischer, Foremost, and Afremov, the underlying substantive mail fraud offenses do not *require* the participation of two or more persons.  *See United States v. Morris*, 957 F.2d 1391, 1403 (7th Cir. 1992) (rejecting similar challenge under Wharton's Rule because "the substantive offenses of mail fraud . . . do not have as an element concerted criminal activity").

For these reasons, the Court denies Afremov's motion to dismiss Count 9 of the Indictment.

## IV.   MOTIONS TO DISMISS MONEY LAUNDERING CHARGES

Afremov argues in two separate motions that the money laundering charges in Counts 10 through 15 should be dismissed.  First, Afremov argues that the Indictment does not adequately trace the path of the alleged money laundering proceeds under 18 U.S.C. § 1857 to the alleged mail fraud transactions.  But "the Government is not required to trace funds to prove a violation of § 1857."  *United States v. Pizano*, 421 F.3d 707, 723 (8th Cir. 2005).  Afremov fails to produce any compelling argument to the contrary, and his motion to dismiss on this basis is therefore denied.

Second, Afremov contends that the money laundering charges improperly allege that defendants used the gross receipts, rather than the net profits, of the alleged unlawful

activity.   The money laundering statute imposes criminal penalties on a person who knowingly "conducts or attempts to conduct . . . a financial transaction which in fact involves the *proceeds* of specified unlawful activity."   18 U.S.C. § 1956(a)(1) (emphasis added).   The Supreme Court recently granted certiorari on the issue of whether "proceeds" means the gross receipts from the unlawful activities or only the net profits (gross receipts less expenses).   *See United States v. Santos*, 127 S. Ct. 2098 (2007).   According to Afremov, the grant of certiorari demonstrates the importance of the issue and warrants dismissal of the indictment.

In *United States v. Santos*, the Seventh Circuit, adhering to its  prior decision in *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002), held that the term "proceeds" under § 1956(a)(1) means "net income."   461 F.3d 886, 894 (7th Cir. 2006).   In so holding, the court noted that the three other circuits that have considered the issue have determined that "proceeds" means gross receipts.   *Id.* at 891-92 (citing *e.g.*, *United States v. Grasso*, 381 F.3d 160, 167 (3d Cir. 2004); *United States v. Iacaboni*, 363 F.3d 1, 4 (1st Cir. 2004)).   In particular, the Seventh Circuit noted that the Eighth Circuit, in *United States v. Huber*, had construed "proceeds" to mean gross receipts.   404 F.3d 1047, 1058 (8th Cir. 2005) (citing *Grasso*, 381 F.3d at 167) (stating that "even if the expenses were legitimately incurred by [defendant], they would not reduce the amount subject to forfeiture").

Afremov argues that *Huber* addressed the scope of § 1956(a)(1) in the context of a forfeiture dispute, and not as a violation of the money laundering statutes.   The Court is not persuaded that the forfeiture context is so different as to warrant a different statutory

construction of the term "proceeds."  Indeed, the Eighth Circuit in construing "proceeds" cited to the Third Circuit opinion in *Grasso*, 381 F.3d at 166-69, which construed "proceeds" in the context of the defendant's conviction for money laundering. *Huber*, 404 F.3d at 1058.  Even accepting Afremov's argument that the Eighth Circuit has not definitively construed "proceeds" outside the forfeiture context, however, this is an insufficient basis upon which to dismiss the Indictment.  The Indictment alleges that defendants "did knowingly engage and attempt to engage in a monetary transaction . . . in criminally derived property" by using "the funds obtained by ATC from Foremost, such property having been derived from a specified unlawful activity, that is, mail fraud." (Second Super. Indict. ¶¶ 14, 16.)  Whether the Supreme Court ultimately determines that "proceeds" means gross receipts or net income, the Court finds that the Indictment adequately sets forth the elements of the money laundering offense and informs the defendants of the charges against which they must defend.  Although defendants may raise this issue again as a challenge to the sufficiency of the evidence presented at trial in support of the money laundering charges, the Court agrees with the Magistrate Judge that pre-trial dismissal of the Indictment is not warranted on this basis.

## V.      MOTION TO DISMISS AND LIMIT THE FORFEITURE ALLEGATIONS

Finally, Afremov argues that the forfeiture allegations are deficient in three respects and should therefore be dismissed or appropriately limited.  First, Afremov contends that the forfeiture improperly relies on the civil forfeiture statute because the alleged mail fraud does not affect a financial institution.  Second, he argues that the forfeiture allegations exceed the permissible scope of the civil forfeiture statute because

they seek property that is not derived from proceeds traceable to the alleged mail fraud. Finally, Afremov argues that the forfeiture allegations regarding his residence fail to connect the home with the alleged money laundering charges.

### A.      Scope of the Civil Forfeiture Statute

Afremov first argues that criminal forfeiture of proceeds derived from alleged mail fraud is available *only* if the mail fraud affects a financial institution.  Under 18 U.S.C. § 981(a)(1)(C), "[a]ny property . . . which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7))," is subject to forfeiture.  18 U.S.C. § 1956(c)(7) defines "specified unlawful activity" by reference to § 1961(1), which in turn contains the mail fraud statute under § 1341.  As such, proceeds traceable to mail fraud are subject to forfeiture under § 981(a).   Section 981 governs civil forfeiture, and civil forfeiture is generally recoverable only in a separate civil action.  28 U.S.C. § 2461(a).  However, under § 2461(c), "[i]f a forfeiture of property is authorized in connection with a violation of an Act of Congress, and . . . no specific statutory provision is made for criminal forfeiture upon conviction," then the prosecution may include the forfeiture in the Indictment.  28 U.S.C. § 2461(c) (2000).

The crux of the instant dispute concerns whether a "specific statutory provision is made for criminal forfeiture" for a mail fraud conviction.  If it is, then the forfeiture must be alleged in a separate proceeding.  According to Afremov, 18 U.S.C. § 982, which governs criminal forfeitures, specifically addresses mail fraud.  *See* 18 U.S.C. § 982(a)(2)(A) (providing criminal forfeiture for a violation of § 1341 affecting a

financial institution). For this reason, Afremov argues, the forfeiture allegations in connection with the mail fraud charges should be dismissed from the Indictment.

However, the Eighth Circuit has recently considered, and rejected, this same argument. *United States v. Jennings*, 487 F.3d 564, 584-85 (8th Cir. 2007). In *Jennings*, the court determined that criminal forfeiture for mail fraud is "'specifically authorized when special circumstances are present, such as when the mail fraud affects a financial institution.'" *Id.* at 584 (quoting *United States v. Vampire Nation*, 451 F.3d 189, 198 (3d Cir. 2006)). Citing the recent holdings of several other circuits, the *Jennings* court found that, under the statutory scheme described above, no criminal forfeiture provision applies to general mail fraud. *Id.* Thus, *Jennings* held that § 2461(c) allows for criminal forfeiture of the proceeds of general mail fraud. In light of the Eighth Circuit's recent pronouncement in *Jennings*, then, the Court finds that the forfeitures are properly alleged in the Indictment, and denies Afremov's motion to dismiss the forfeiture allegations on this basis.

### B.     Sufficiency of the Forfeiture Allegations

Afremov's second and third arguments concern the sufficiency of the forfeiture allegations. Afremov challenges the mail fraud forfeiture allegations on grounds that the Indictment does not generally explain how the property and funds sought by the prosecution as forfeiture are connected to the proceeds of the alleged mail fraud. Similarly, Afremov challenges the money laundering forfeiture allegations, which seek forfeiture of Afremov's residence, on grounds that the Indictment fails to show how the residence was involved in or traceable to the money laundering charges. The prosecution

counters that the forfeiture allegations in the Indictment provide Afremov with the basic notice to which he is entitled under Rule 32.2(a). *See* Fed. R. Crim. P. 32.2(a).

Under Rule 32.2(a), a court may not enter forfeiture in a criminal proceeding "unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a). Rule 7(c)(2), enacted along with the adoption in 2000 of Rule 32.2(a), sets forth the basic pleading requirement that a criminal forfeiture provide defendant with "notice that the defendant has an interest in property that is subject to forfeiture in accordance with the applicable statute." Fed. R. Crim. P. 7(c)(2). As the Advisory Committee Notes to Rule 32.2 make clear, however, this notice provision is not intended to require that an itemized list of property to be forfeited appear in the indictment, nor does it require a substantive allegation in which the property sought must be described in detail. Fed. R. Crim. P. 32.2 Advisory Committee's Note subd.(a) (citing *United States v. DeFries*, 129 F.3d 1293 (D.C. Cir. 1997) (stating that the prosecution need only put the defendant on notice that it will seek forfeiture under the applicable statute, such as all property "acquired or maintained" as a result of a RICO violation)).

Paragraph 20 of the Indictment provides that defendants "shall forfeit . . . all right, title and interest in any property constituting, or derived from, proceeds traceable to the violations" of the mail fraud statutes. (Second Super. Indict. ¶ 20.) Paragraphs 21 and 22 seek forfeiture of all "right, title, and interest in all property, real and personal, involved in violations of [the money laundering statute] and in all property traceable to such

property." (Second Super. Indict. ¶¶ 21-22.) The forfeiture allegations go on to list the various assets sought in connection with the mail fraud and money laundering charges, including Afremov's residence in St. Louis Park, Minnesota. The Court finds that these allegations provide adequate notice to the defendants that the prosecution will seek forfeiture of property in accordance with the underlying forfeiture statute.

Afremov objects that the Indictment fails to set forth any facts that connect the funds and property sought with the underlying mail fraud and money laundering charges. But the absence of such factual allegations is not fatal to the forfeiture allegations, so long as the forfeiture satisfies the basic notice requirements of Rule 7(c)(2). *See United States v. DiGilio*, 667 F. Supp. 191, 197-98 (D.N.J. 1997) (rejecting defendant's argument that forfeiture allegations are deficient because they fail to allege sufficient facts to show the assets sought fall within the ambit of the forfeiture statute); *United States v. Sarbello*, 985 F.2d 716, 719-720 (3d Cir. 1993) ("[T]he forfeiture indictment need only track in some minimal form the language of the applicable statute in order to permit a responsive defense strategy.").

For these reasons, the Court agrees with the Magistrate Judge that the forfeiture allegations are adequately set forth in the Indictment. Afremov's motion to dismiss or limit the forfeiture allegations is therefore denied.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** defendant's objections [Docket No. 147] and **ADOPTS** the Report and

Recommendation dated June 25, 2007 [Docket No. 141]. **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion to Dismiss Counts 1 Through 8 of the Superseding Indictment [Docket No. 73] is **DENIED**.

2.      Defendant's Motion to Dismiss Counts 1 Through 8 of the Superseding Indictment as Unconstitutionally Vague and Barred By the Rule of Lenity [Docket No. 76] is **DENIED**.

3.      Defendant's Motion to Dismiss Conspiracy and Aiding and Abetting Charges [Docket No. 79] is **DENIED**.

4.      Defendant's Motion to Dismiss Money Laundering Charges in the Superseding Indictment [Docket No. 86] is **DENIED**.

5.      Defendant's Motion to Dismiss Money Laundering Charges Based on United States v. Santos [Docket No. 111] is **DENIED**.

6.      Defendant's Motion to Dismiss and Limit the Forfeiture Allegations [Docket No. 89] is **DENIED**.


DATED:    October 30, 2007                          _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                     United States District Judge